NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**FLATLAND REALTY, LLC,**
*Appellant*

**v.**

**SECRETARY OF THE ARMY,**
*Appellee*

---

2024-1531, 2024-1534

---

Appeals from the Armed Services Board of Contract Appeals in No. 63409, Administrative Judge Timothy Paul McIlmail, Administrative Judge Michael N. O'Connell, Administrative Judge Richard Shackleford.

---

Decided: December 17, 2025

---

HAYDEN HOWLETT, Silverpine Law PLLC, Washington, DC, argued for appellant.

ANNA BONDURANT ELEY, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for appellee. Also represented by WILLIAM JAMES GRIMALDI, PATRICIA M. MCCARTHY, BRETT SHUMATE.

---

Before LOURIE, SCHALL, and STOLL, *Circuit Judges.*

SCHALL, *Circuit Judge.*

## DECISION

This case comes to us from the Armed Services Board of Contract Appeals ("Board"). Flatland Realty, LLC ("Flatland") appeals the decision of the Board that awarded Flatland some, but not all, of the damages it sought on account of the breach by the Army Corps of Engineers ("Corps") of a lease agreement between the Corps and Flatland. *Flatland Realty, LLC*, ASBCA No. 63409, 2023 WL 7797531 (Oct. 30, 2023), Appx. 1–10. We have jurisdiction pursuant to 41 U.S.C. § 7107(a)(1)(A) and 28 U.S.C. § 1295(a)(10). For the reasons set forth below, we *affirm-in-part*, *reverse-in-part*, and *remand*.

## DISCUSSION

### I

The pertinent facts are not in dispute and are set forth in the decision of the Board. In 2014, the Corps and an entity named KFE, LLC ("KFE") entered into a 15-year lease requiring KFE, as lessee, to operate a commercial concession at the Dam East Recreation Center, Carlyle Lake, in Illinois. Appx. 1. In February of 2016, KFE's interests under the lease were assigned to Flatland. *Id.*

The assignment extended the lease expiration date to September 14, 2030, and included a Use and Development Plan ("UDP"). *Id.* The UDP included a "Five-Year Plan" that set forth development benchmarks for "Year One" through "Year Five," as well as minimum performance requirements for those periods that included the provision of kayaks and bicycles for rent to visitors to the lake and the operation of a fish restaurant. *Id.*

The lease provided that the use and occupation of the leased premises was subject to the general supervision and

approval of the Corps's District Engineer. *Id.* at 2. The lease also provided, in section 19, that it could be "revoked" in the event that the lessee violated any of its terms and conditions. Appx. 21.[1] The lease further provided, in section 12, that if the lease was revoked, the lessee was required to "vacate the premises, remove [its] property, and restore the premises to [their original] condition within such time as the District Engineer may designate." *Id.* at 18. Finally, section 12 also provided that if the lessee failed or neglected to remove its property and restore the premises, "then, at the option of the District Engineer, said property shall either become the property of the United States without compensation therefore, or the District Engineer may cause the property to be removed and no claim for damages against the United States or its officers or agents shall be created by or made on account of such removal and restoration work." *Id.* at 18–19.

In 2020, Flatland and the Corps began discussions on a new UDP. Appx. 2. Eventually, they entered into an arrangement whereby the building at the Dam East Recreation Center was used for wedding and party events during the October through April "off-season." *Id.* However, despite the apparent agreement that the concession could be operated at least some of the time as a wedding and event venue, the parties were unable to agree on all the details of a new UDP. *Id.* at 2–3.

During the period between March and December of 2021, Flatland and the Corps tried to reach an agreement on the terms of a new UDP. *Id.* at 3. These efforts were unsuccessful, however, and on December 7, 2021, the Corps revoked the lease. In its letter of revocation, the Corps informed Flatland that its most recent UDP proposal could

---

[1] The lease did not contain the termination for convenience clause typically found in government contracts, or any equivalent clause. *See* Appx. 2.

not be approved because Flatland "ha[d] been unable to provide a plan for facilities that meet[s] the expectations of a commercial concessions lease." *Id.* (first alteration in original). Pursuant to section 12 of the lease, the Corps requested that Flatland submit a plan to restore the premises. *Id.* at 4. On May 23, 2022, after the parties were unable to agree on a restoration plan, the Corps notified Flatland that "[d]ue to your refusal to submit a restoration plan for the removal of improvements from[,] and restoration of[,], the leased area, all property that remains on the premises *effective immediately*, will become property of the United States without compensation, per the terms of the lease." *Id.* (first alteration and emphasis in original). On May 24, 2022, the Corps told Flatland that the lease "was terminated because [Flatland was] unable to provide recreational opportunities to the public during the recreation season." *Id.* (alteration in original).

On May 26, 2022, Flatland submitted a certified claim to the contracting officer, alleging wrongful termination of the lease and seeking $800,000 in alleged damages. *Id.* After the contracting officer denied the claim, Flatland appealed to the Board, where the parties submitted the appeal on the record and without a hearing under Board Rule 11. *Id.* at 1.

II

In the decision on appeal, the Board first addressed Flatland's challenge to the Corps's action terminating the lease for default. When a contractor challenges the default termination of a lease, the government has the burden of establishing the validity of the termination. *Oscar Narvaez Venegas,* ASBCA No. 49291, 98–1 BCA ¶ 29,690 at 147,140, 1998 WL 164415 (Apr. 3, 1998); *see Dep't of Transp. v. Eagle Peak Rock & Paving, Inc.*, 69 F.4th 1367, 1375 (Fed. Cir. 2023) ("When a contracting officer terminates a contract for default, and the contractor appeals that termination decision, 'the government . . . bear[s] the

burden of proof with respect to the issue of whether termination for default was justified.'" (alterations in original) (quoting *Lisbon Contractors, Inc. v. United States*, 828 F.2d 759, 765 (Fed. Cir. 1987))); *Moreland Corp. v. United States*, 76 Fed. Cl. 268, 284 (2007) (explaining that the principal that the government bears the burden of proof to show the propriety of the default termination of a contract "appl[ies] with equal force where the Government has terminated a lease") (first citing *Lisbon Contractors*, 828 F.2d at 765, then citing *Oscar Narvaez Venegas*, 98-1 BCA ¶ 29,690 at 147,142). The Board determined that the Corps had failed to carry its burden. The Board concluded that the Corps was not justified in revoking the lease, and because the lease lacked a termination for convenience clause, the unjustified revocation constituted a breach. Appx. 6 (citing *Krygoski Constr. Co. v. United States*, 94 F.3d 1537, 1540–41 (Fed. Cir. 1996)).

Having found that the Corps had breached the lease, the Board turned to the matter of quantum. Before the Board, Flatland sought $800,000 in damages, plus interest. The $800,000 figure consisted of (1) $460,000 for the building in which the concession operated, plus (2) $360,000 for the business (the concession that Flatland was entitled to operate through September 14, 2030), minus (3) a $20,000 "salvage value," representing the value of property that Flatland had removed from the concession site. Appx. 6–7.

The Board concluded that Flatland was not entitled to recover for the building. The Board reasoned that "[a]lthough the government's revocation of the lease was a breach, the government *did revoke* the lease, triggering the lease's provisions [in section 12] governing removal of the lessee's property and restoration of the premises, which provisions provide, essentially, that property abandoned by the lessee becomes government property, without compensation, at the option of the government." *Id.* at 7 (emphasis in original).

Addressing Flatland's claim for the loss of the concession, the Board determined that Flatland was entitled to a recovery in the amount of $210,000. *Id.* at 8–9. The Board arrived at this figure by reducing the amount in Flatland's appraisal ($360,000) by 5/12. *Id.* The Board made this reduction based on its finding that while Flatland's appraisal was based on operation of the concession as a year-round wedding and event venue, in fact Flatland was only permitted to conduct events for seven months of the year. *Id.* Accordingly, the Board held that Flatland was entitled to recover the amount of $210,000 plus interest, in accordance with 41 U.S.C. § 7109. *Id.* at 9. Following the denial of its motion for reconsideration, Appx. 11, Flatland timely appealed.

### III

We review the Board's legal conclusions, including contract interpretation, de novo. 41 U.S.C. § 7107(b); *Lessors of Abchakan Vill. v. Sec'y of Def.*, 137 F.4th 1301, 1309 (Fed. Cir. 2025). We may only set aside a factual finding if it is "(A) fraudulent, arbitrary, or capricious; (B) so grossly erroneous as to necessarily imply bad faith; or (C) not supported by substantial evidence." 41 U.S.C. § 7107(b); *Kellogg Brown & Root Servs., Inc. v. Sec'y of the Army*, 973 F.3d 1366, 1370 (Fed. Cir. 2020). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

### IV

#### A

Flatland's first argument on appeal is that the Board erred in denying it recovery for the loss of its building. Flatland contends that because the Corps breached its contract with Flatland when it revoked the lease, the Board erred in applying the provisions of section 12 of the lease, thereby allowing the Corps to take Flatland's property.

Appellant's Br. 17–23. The government responds that although the Board correctly determined that the Corps's revocation of the lease was a breach, the fact remains that the Corps did revoke the lease, thereby triggering the provisions of section 12 governing removal of Flatland's property and restoration of the premises. Appellee's Br. 15–16.

We agree with Flatland. When the Corps breached the contract, Flatland was excused from performing the removal and restoration provision of section 12 of the lease pursuant to the common law rule of prior material breach. *See Barron Bancshares, Inc. v. United States*, 366 F.3d 1360, 1380–81, 1383 (Fed. Cir. 2004) (explaining that a prior material breach by investors could excuse the government from its contractual obligations to the investors, rendering moot the government's breach); Restatement (Second) of Contracts § 237 cmt. b (discussing "first material failure of performance," and stating that "[t]he rule is based on the principle that where performances are to be exchanged under an exchange of promises, each party is entitled to the assurance that he will not be called upon to perform his remaining duties of performance with respect to the expected exchange if there has already been an uncured material failure of performance by the other party"); *see also id.* cmt. a ("[A material failure of performance] prevents performance of [the other party's] duties from becoming due, at least temporarily, and it discharges those duties if it has not been cured during the time in which performance can occur.").[2] Accordingly, we reverse the Board's

---

[2] The lease did not contain a choice-of-law provision, but we note that Illinois, where the concession was located, recognizes the common law rule of prior material breach. *See, e.g., Mohanty v. St. John Heart Clinic, S.C.*, 866 N.E.2d 85, 96–98 (Ill. 2006) (concluding that the plaintiffs did not prove a prior material breach of a contract and

legal conclusion that Flatland was not entitled to recover for the loss of its building.  We remand the case to the Board for a determination of damages based upon the value of the building.

B

Flatland's second argument on appeal is that the Board should have awarded it the entire $360,000 that it sought for the value of the concession business.  It contends that the Board's reduction in the amount Flatland sought is not supported by substantial evidence.  We do not agree.

The Board's reduction from the $360,000 that Flatland sought to $210,000 was premised on the Board's findings that the appraisal Flatland presented was based on (1) Flatland's operation as a year-round wedding and event venue value; and (2) that Flatland was only permitted to conduct events for seven months of the year.  Appx. 8–9.  Flatland does not dispute that the Corps only permitted it to host events for seven months a year.  At the same time, the finding that the appraisal was based on a year-round wedding and event venue business model is supported by substantial evidence.  The appraisal provided that "[t]he company is a wedding venue business," that "[t]he management team is similar to that of a typical wedding venue business," and that the "property will be functional full time."  Appx. 238.  Nowhere in the appraisal is there an indication that the wedding venue appraisal was for a

therefore could not be relieved of their obligations under the contract); *id.* at 95 ("Under general contract principles, a material breach of a contract provision by one party may be grounds for releasing the other party from his contractual obligations." (citing *William Blair & Co. v. FI Liquidation Corp.,* 830 N.E.2d 760 (Ill. App. Ct. 2005))); *id.* at 95–96 (discussing *Galesburg Clinic Ass'n v. West,* 706 N.E.2d 1035 (Ill. App. Ct. 1999)).

partial-year term.  We therefore affirm the part of the Board's decision that awarded Flatland $210,000 in damages for the loss of the concession business.

## CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive.  For the foregoing reasons, we affirm the decision of the Board that awarded Flatland $210,000 for the loss of its concession business, but we reverse the decision of the Board that denied Flatland recovery for the loss of its building.  The case is remanded to the Board for a determination as to the value of the building and the award of that value to Flatland for the loss of the building.

**AFFIRMED-IN-PART, REVERSED-IN-PART, AND REMANDED**

## COSTS

Costs to Flatland.